Good morning, Your Honors. My name is David Gilmour, and if it pleases the Court, I'm here on behalf of the appellant and plaintiff in this case, Terry Aluisi. Mr. Aluisi, as you can garner from the record, was employed as a chief operating officer of a manufacturing company called Elliott Manufacturing, which is located in my hometown, Fresno, California. Mr. Aluisi was a highly compensated and very experienced executive in that company, and as you can see from the description of his job, as was provided by Dr. Tom Cole, who is the owner of Elliott Manufacturing, I believe that that is located in the record, starting at page 562. Mr. Aluisi's job required him to supervise 70 employees. It required him to engage in very long work hours, to engage in policy, safety procedures, and to travel extensively. His job was not a physical job, which brings us to the series of events that leads us to the Court today with regard to the disability claim that Mr. Aluisi filed in this case. And where I part company most dramatically with the district court in this case and the analysis, and where I part company also with Unum on this case, has to do with the assessment of Mr. Aluisi's disability versus Mr. Aluisi's job responsibilities. Well, they paid Mr. Aluisi for about 13 months, or I forget, a number of months, until they started to receive information in Unum that suggested there might be some issues. And you're right. His job description doesn't require him to row a boat or lift a cooler per se, but is the fact that he was viewed as being able to do so without objective indicia of significant pain or difficulty, doesn't that cast some serious question on how much pain he was suffering that might otherwise interfere with his ability to concentrate, to negotiate, to supervise, engage in his duties as general manager? Well, I certainly think that that raises a question that requires Unum to engage in a further meaningful dialogue with his doctors and to conduct a further investigation. I think we would all agree we're in professions that are sedentary in the sense that we all sit at our desks, in my case probably way too much. I thought I would ask you about my job, but I decided not to go there. And we hardly ever have an occasion to lift something very heavy or to do those kinds of things. The fact that Mr. Aloisi was able to go to the lake for the weekend, to sit in a car for an hour, to do minimal, if you really look through the transcript of the surveillance and you watch the surveillance, minimal amount of lifting. For the most part, what was observed was that he was sitting in the driver's seat of the boat. Maybe the most troublesome thing all maybe would be he sat in the boat and rowed a little bit during the course of that. The problem is after that happened, Unum went back to the doctors, including Dr. Azevedo, who is the pain specialist. And they said, look at the tapes. Dr. Azevedo looked at the tapes and he says he observed, he thought that there were indications that Mr. Aloisi was suffering some pain. And he then concluded that that doesn't show that Mr. Aloisi was misrepresenting his disability. The problem in this case, it seems to me, and it's been recognized in other cases before this Court, Saffron being an example, that complaints of pain are very subjective. Every person tolerates pain differently, and everybody deals with pain much differently. It seems to me that where all of this went off the track from the Unum analysis and ultimately, in my view, in the district court analysis, once Unum became aware that Dr. Azevedo said, I don't think it misrepresents his disability, Unum said, okay, well, let's do an independent medical exam. The cases are clear under ERISA that an independent medical exam is not a requirement. In other words, no court has said thou must do an independent medical exam in every case. But what the courts have recognized is that when you have a situation where you have questions about credibility of the claimant, you have differing diagnoses, you have the Unum analysis that they're doing based only on the medical records that say, we question whether this gentleman really is as disabled as he says. His treating physician says he's disabled and he cannot work. That to conduct a full and fair analysis as is required under ERISA would require, it seems to me, that Unum go through with that independent medical exam. If you look at the questions that were set forth for the medical exam, they were designed to get at these issues. What Unum did instead was send out an investigator to talk to Mr. Aloisi. They don't ask him about the trip to the lake. And as a trial lawyer, I understand if I'm taking a deposition, I might not spring that on somebody in an examination. But Unum is not a trial lawyer. Unum is in a fiduciary position here, a trust obligation that Congress imposed when it set up ERISA. But you don't, you really don't allege, as I've seen your pleadings, that there were any ERISA procedures that were violated, do you? No, Your Honor, I do not. I think you, you don't, you don't suggest that even there were more ERISA procedures that needed to be done to prevent a full development of the record, do you? No, I do believe that there are other things that should have been done to develop the record. Well, you believe they should have been done, but nothing required by ERISA. I didn't see it in your pleadings. Well, I think that maybe that's enough. I mean, your idea is I'd like to have had them done other things, but as I understood it, when I was looking dread on your briefs, there was nothing that was required that was not done. No statutory procedures that were violated and nothing that's required under ERISA they did not do. I think, Your Honor, that is correct. So when we get to there, then it seems to me that at that point, the good old trial judge, he's got some pretty outstanding evidence in this case. He's got Unum engaged in dialogue with Aloisi and his doctors many times. He's got records from five doctors. He's got medications, physical examinations, diagnostical information, blood work, x-rays. The records were current as of the denial, and he's looking at that in accordance with correspondence, all kinds of stuff, and now I'm to suggest on that record that Unum abused their discretion or that he's to do the same? Absolutely. I mean, I guess I'm trying to figure it out. Let's go to did he take into the conflicts of interest. It seems to me the district court absolutely took in the conflicts of interest. It talks about the history of the faulty claims. He talks about the structural conflict of interest. He even comments about failure to consider actual job requirements rather than generic sedentary description. And then on the other side, he says, but Unum nevertheless has their benefit specialists can't do this and can't do that. So he didn't ignore this conflict of interest analysis. So, again, we're on abuse of discretion of Unum, and he's looking at all the things I'm thinking he needs to do. That's correct, but the problem is... So how is he wrong? He can move around from that chair, and, therefore, he's not disabled. That's not the test. And under the statutes and under the cases as they've interpreted that, Unum has an obligation to determine what Mr. Aloisi's actual job duties are during that first 24-month period and to compare everything to that actual job, not some mythical job, his actual job. And after 24 months, to something that he is trained for. Well, but, frankly, I'm a little worried that that's a red herring issue. I don't think Unum was anything in this file suggesting Unum made this decision based on what the job was, other than what he had told him his job was, what he told him he had to do, and then they go get a film that says it doesn't do that at all. Well, I believe that that is incorrect, because in the record, Unum relies on a department form, a DOT form, to decide that Mr. Aloisi is, in fact, the equivalent of a president of a company. Well, they do say that, but the bottom line is he outlines what his description of his duties are, whether he can walk, whether he can sit, and whether he can stand for extended periods of time. He tells them not more than 15 minutes. It's terrible. And then they go get a film, and it shows that's not it at all. Well, I think if you look at the bottom line, that's the worry that I have. And then it seems to me that he changes his complaint, because now it's not sit, stand, or walk. In fact, it's I can't concentrate, which is the first time we've had that in the record. But, see, that's another error that was made by the district court, because in the record, in the different documents that were in there, as early as July 1st of 2002, which is at 8 and 9 and 449, the issue was his ability to concentrate. And when Tom Cole, the owner of Elliott Manufacturing, provided a description of Mr. Aloisi's job, not Mr. Aloisi, Dr. Cole, Dr. Cole very carefully went through and described everything that he had to do that was cognitive. When the interview took place after the trip to the lake, where they rely on that to say, well, he says he can't sit for more than 10 or 15 minutes. In fact, in the interview what he said was he can push it to four or five hours from time to time. But the problem is to act as an executive in a company, just as to act as an attorney or a doctor, you have to be able to concentrate for long, tedious, sometimes hours to get the job done. So for Unum to look at the surveillance tapes, which I still think are not that revealing, but to look at those tapes and say the man went to the lake, he sat in a car for an hour to get there, he sat on a boat, they never asked him one time, never inquired of him what was going on or how he felt when all that was going on. Instead, they just said, well, see, he says he can sit for more than an hour, so he must be able then to act as a COO of a manufacturing company. That leap in logic does not comport with Unum's responsibilities to determine whether or not he qualifies for disability benefits under the terms of the policy. You're down to a little under two minutes. Do you want to save some time? I see that. I will save some time for response. Thank you. Thank you. Thank you for coming in, counsel. Mr. Green. Good morning, Your Honors. Terry Aloisi told his employer's disability carrier that he couldn't work because he couldn't sit or stand for longer than 15 minutes without debilitating pain. The disability carrier caught him on videotape doing these things and much more, including continuing to go to the office. His doctors could not negate or explain the huge gap between what Mr. Aloisi said he could do and what the investigation showed he could do. Accordingly, the district court ruled that the carrier correctly found that Mr. Aloisi was not totally disabled. Mr. Aloisi submitted a claim for total disability benefits in December 2001. He said he was disabled by debilitating back pain, which prevented him from working as a chief operating officer of the Elliott Manufacturing Company. Unum Life Insurance Company was the claims administrator and claims payor for the Elliott Manufacturing Company long-term disability plan. Initially, Unum approved the claim and paid benefits after reviewing Mr. Aloisi's medical records and speaking with one of Mr. Aloisi's treating doctors. I thought my understanding, you correct me if I'm wrong from the record, is he claimed disability based on back pain, and he received medical treatment, prescription drugs to treat the back pain, and became addicted to the medication. Is that right? That yes, Your Honor, that is correct. All of that happened during 2001, and I will point out that pretty much all that happened because he became addicted to medication during the time when he was still working. Mr. Aloisi stopped working in October of 2001, and according to the medical records, the reason that he stopped working was he underwent detoxification. He went into the hospital to be detoxified from the addiction to prescription medications. Do we know whether or not when he was observed doing these things, going to the lake, et cetera, he was taking medication? According to the medical records from Dr. Azevedo, who was his main treating physician at that time, Mr. Aloisi was not taking any pain medication. Several months prior, he had tried Duragesic. He said he didn't like it. So what Dr. Azevedo's records indicate was that he was just going to try to deal with his pain without medication. We also know that in January of 2003, Dr. Azevedo referred him to a pain specialist, Dr. Zalazar, who recommended that they do a blockade, a surge or injections of steroids, and Mr. Aloisi declined that procedure. Is it Udo's view or position in your papers that Mr. Aloisi, I won't say concocted, but started to raise the issue of lack of concentration after he was confronted then with the video surveillance? Yes, Your Honor. But that's not accurate, is it? I mean, when you look at the as counsel for Mr. Aloisi was pointing out, I saw on the record a couple of instances on March 29, 2002, at ER 449, in Dr. Azevedo's notes, he stated that now that he was off the opiate medication, he had gotten to the point that the pain was so severe he couldn't sit or think at work. He was so preoccupied with the pain. Again, in December 2002, Azevedo's progress report indicates at ER 572 that Aloisi can't even concentrate frequently during the day because of the pain. These were not new after the videotape war. These were things that he had brought to the attention of the treating physicians. That is correct, Your Honor. Let me explain it this way, if I may. When Mr. Aloisi initially submitted his claim to Unum in writing, and then in subsequent telephone conversations, which are documented in the file, when Unum asked Mr. Aloisi, why can't you work, what he told Unum was, I can't work because I can't sit or stand or walk for longer than 15 minutes before then I'm in excruciating pain. So in his communications to Unum, what he talked about was his physical pain. Nurse Soans, in her January 2004 review, noted that there was, there were references in the record to Mr. Aloisi giving a history of Dr. Azevedo of having problems with concentration, but she also noted that there were no referrals for diagnostic workups in the file. What Mr. Aloisi doesn't mention in reference is that the only references in the file to where a doctor looked at his ability to think or focus or concentrate are as follows. Dr. Salazar performed a review of Mr. Aloisi in January 2003, and he found that Mr. Aloisi's memory, cognition, focus, and concentration were all appropriate. Dr. Ralph evaluated Mr. Aloisi in March of 2003, and Dr. Ralph stated that Mr. Aloisi's mental status was normal. In addition, there's reference in the record to Mr. Aloisi continuing to attend board meetings as a member of the board of directors. Finally, the surveillance shows that Mr. Aloisi had sufficient concentration and focus to drive an hour, hour out, sorry, an hour out of his life. An hour back to Shaver Lake, back-to-back days, August 30th and 31st, 2003, which takes a fair amount of concentration and focus. So, yes, were there references, were there a couple of references in the history Mr. Aloisi gave to his treating physician? Yes, absolutely there were. Does the record contain any reference of any doctor diagnosing or even observing any impact whatsoever on his ability to function, to think, concentrate and function cognitively? No, there is not. I think we have your argument well in hand. Anything else you're dying to tell us? No. Unless the Court has, I have a bunch of stuff. Unless the Court has further questions or issues, we would submit on the record. Thank you. Thank you very much for coming in today, Mr. Green. Rebuttal. Thank you. I think we got to go back a little bit because Mr. Aloisi, right from early on, after he went through detox, we have to remember that, he kept working, got addicted to drugs. It's only after he got out of detox that the pain got so bad that he couldn't work. And to go into the doctor and see whether or not you have a memory in a 15, 20 or half-hour session does not address the problem here. Because Tom Cole, in describing his job descriptions, requires long hours, 50 hours a week. The issue is can you concentrate? Can you focus for that period of time? The reality of it is that driving a car to the lake or driving a boat on the lake does not require the level of concentration that's required in order to perform the job. So are you arguing that the ability or inability to concentrate is based on the inability to sit or stand or walk? No. The ability is that after a period of time, whether he's sitting, standing, walking, he gets to the point where the pain is so bad that he cannot focus. And I recognize, of course, it's not before this Court because we do this on the administrative record. But it's clearly obvious, at least to me, if I meet with him. But the point is that the system, unfortunately, doesn't really handle the subjective kind of claims like pain very well. And that's the problem here. This is a subjective claim. And under a subjective claim, further steps should have been taken before they decided to deny Mr. Aloisi his benefits. Okay. Thank you. Right. On the mark. Thank you both for coming in. Very interesting case. Well argued. We appreciate you coming in. Thank you. Pleasure to be here, actually. Thank you. The Court for this session stands adjourned. All rise.
judges: Pro, Hawkins, Smith N. R.